UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

MICHAEL R. JACOBS,

            **DECISION AND ORDER**

        Petitioner,           **No. 03-CV-6586**

    v.

CALVIN E. WEST, Superintendent of
    Elmira Correctional Facility,

         Respondent.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

## INTRODUCTION

Petitioner, Michael R. Jacobs ("Jacobs") filed this petition *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254") challenging his conviction in New York State County Court, Ontario County, on one count of Assault in the First Degree (New York Penal Law ("P.L.") § 120.10(3)), one count of Assault in the Second Degree (P.L. § 120.05(1)), one count of Criminal Contempt in the Second Degree (P.L. § 215.50(3)), and five counts of Endangering the Welfare of a Child (P.L. § 260.10(1)). The charges stemmed from an assault on Bethany Chadwick ("Bethany"), the nineteen-year old  daughter of Jacobs' girlfriend, Kathleen Chadwick ("Chadwick"). Jacobs was convicted by a jury and sentenced as a violent felony offender to a determinate term of incarceration of twenty-five years on the Assault in the First Degree conviction. In addition, Jacobs was sentenced to a five-year term of incarceration for the conviction on Assault in the Second Degree, six months for the Criminal Contempt, and six months

for each of the five counts of Endangering the Welfare of a Child, all of which were set to run concurrently with his twenty-five year sentence. He is presently incarcerated at the Elmira Correctional Facility pursuant to these convictions. For the reasons set forth below, Jacobs' § 2254 petition is dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

By Ontario County Indictment No. 00-07-157, Jacobs was charged with one count of Assault in the First Degree, one count of Assault in the Second Degree, one count of Criminal Contempt in the Second Degree, and five counts of Endangering the Welfare of a Child. These charges result from an incident that took place in the early morning hours of August 26, 2000 at 95 West Street in Geneva, New York, the residence of Kathleen Chadwick. Chadwick, who had been at work and then went out for drinks, arrived home at around 2:00 a.m. and went to check on her four younger children before going into her bedroom, which she shared with her oldest daughter, Bethany. T.[1] 101-2. That night, Chadwick left Bethany in charge of watching the four younger children while she was at work. While her four younger children were asleep in their beds, Chadwick found Bethany positioned half-off of her bed, unconscious, and laying in her own vomit. T. 102. Chadwick rushed to wake her next oldest child, Carzel, to find out what had happened to Bethany but was unable to rouse him. T. 103. When Chadwick returned to Bethany's

---

[1] Citations to "T.__" refer to the trial transcript.

room and tried to move her, she saw that Bethany's face was "caved in." T. 104.

Immediately, Chadwick raced over to a neighbor's house to call for help, as her phone was not yet installed. T. 104-5. Officer Robert Middlebrook, Geneva City Police Department, was the first to arrive on the scene and found a "barely breathing" Bethany lying partially on her bed in a pool of vomit. T. 170. The paramedics arrived and Officer Middlebrook ran downstairs to tell them to "hurry because she was in bad shape." T. 174. The first medical responder was Lynette Hulslander ("Hulslander"), a paramedic with Finger Lakes Ambulance, who found Bethany in an unresponsive state with multiple bruises and abrasions on her face. T. 160-61. Hulslander's initial examination of Bethany supported her suspicion that Bethany had a critical, life-threatening brain injury. T. 163. Given the extent of her critical injuries and the fact that Bethany was six-months pregnant, Hulslander called for the Mercy Flight helicopter to transport Bethany to Strong Memorial Hospital, where she would receive more specialized emergency treatment for her head injuries. T. 165-66.

When Bethany arrived at Strong Memorial Hospital, she was under the care of Dr. Peter Papadakos, the Director of Critical Care Medicine. T. 188. Dr. Papadakos testified at trial that Bethany was placed on a mechanical ventilator to provide life support and she suffered from cerebral edema, or swelling of the

brain. T. 193-94. The swelling of Bethany's brain was so severe that Dr. Papadakos ordered a neurosurgeon to drill holes into her skull to relieve the pressure. T. 195. Dr. Papadakos opined that Bethany's injuries resulted from the trauma of a blunt force and her injuries were similar to brain injuries resulting from car crashes. T. 201. In addition, Dr. Papadakos testified that Bethany had multiple bruises, contusions, and a lacerated liver. T. 196.

For the next four weeks, Bethany was placed into a medically-induced coma to allow her brain to heal. T. 197. During this period, it became necessary to perform a tracheotomy on Bethany, as well as a semi-emergent cesarian delivery of her unborn child due to a threatening infection. T. 199. Following Bethany's seven-week stay in the Intensive Care Unit at Strong Memorial Hospital, she was transferred to the Brain Injury Rehabilitation Unit at St. Mary's Hospital in Rochester, New York, where she stayed for the next two months. T. 231. While staying at St. Mary's, Bethany worked with Dr. William Schneider, a neuropsychologist in the Brain Injury Rehabilitation Unity. T. 231. At trial, Dr. Schneider testified that Bethany suffered from posttraumatic amnesia for 10 to 12 weeks following that attack, which is indicative of a severe brain injury. T. 235-36. Moreover, Dr. Schneider stated that Bethany's injuries left her with "permanent long-term impairments," which included severe attentional impairments, memory impairments, an inability to continue with regular educational programs, and an

inability to live independently and care for her child on her own. T. 239, 241, 245.

At trial, Jacobs' eleven-year old son, Michael J. Jacobs Jr., testified about the events that surrounded the incident with Bethany and Jacobs, as he was an eyewitness. Michael testified that he was in the Chadwicks' house at 95 West Street the night that Bethany was injured. T. 122. According to Michael, on August 26, 2000, he went with his father to the Chadwicks' house to sleep but Jacobs got into an argument with Bethany. T. 123-24. Michael stated that Bethany was saying "nasty words" to his father and she had a knife in her hand. T. 124. However, after reviewing the grand jury hearing minutes, Michael testified that he saw his father take the knife from Bethany and strike her with it. T. 127.[2] Bethany then tried to leave the house but Michael saw Jacobs stop her from leaving. T. 132. At this point, Bethany ran upstairs and Jacobs followed her, after which Michael heard Bethany screaming. Id. Michael quietly went upstairs and saw his father stomping on Bethany, who was unconscious and laying on the floor. T. 135. Michael also saw his father pour water onto Bethany's face after she threw up and then pick her up and place her in bed. T. 138-39. Michael testified that after the attack he left the house with Jacobs, while the four other children were downstairs unattended

---

[2]After Michael gave testimony at trial that was inconsistent with the testimony he gave to the Grand Jury, it was revealed that Jacobs had telephoned Michael prior to his testifying at trial and told him "don't tell nothing." T. 129.

and crying.  T. 140.  Once Michael left the house with Jacobs, they drove to an uncle's house and then to a McDonald's at a rest stop on the New York State Thruway. T. 141-42.

Later in the day on August 26th, Jacobs returned to 95 West Street and the police were summoned by a neighbor. T. 179.  Officer Kenneth Greer, Geneva City Police Department, responded to the 9-1-1 call and found Jacobs standing outside the residence when he proceeded to ask Jacobs for his name and date of birth. T. 178-79. After Jacobs identified himself, Officer Greer testified that Jacobs, without being questioned, stated that he "just came [there] to find out what happened last night." T. 180.  Jacobs also produced two receipts, one from McDonald's and the other was a Thruway toll receipt, and told Officer Greer that if he looked at the receipts he would see that Jacobs was "out of town" that night. T. Id.  At that point, Officer Greer place Jacobs under arrest for an unrelated warrant from Monroe County for Assault in the Third Degree. T. 181.

Following Jacobs' arrest, he was transported to the Geneva Police Department, where he was interviewed by Detective William Quigley.  T. 205.  Detective Quigley read Jacobs his Miranda rights, which Jacobs stated he understood and Jacobs then agreed to speak with him about the incident that occurred at 95 West Street. T. 207.  During their conversation, Detective Quigley used a typewriter to record Jacobs' statement and had Jacobs review the

typed version of his statement and sign it. T. 207-9. In Jacobs'
statement, which was read to the jurors by Detective Quigley,
Jacobs stated he did get into an argument with Bethany and when she
came [3]at him with something in her hand, he might have hit her.
Jacobs also stated that Bethany ran upstairs and as he followed
her, he yelled "Now you ain't getting away easy. I am going to
kick your ass." T. 215. Once upstairs, Jacobs admitted in the
statement that he "slammed" Bethany, causing her to pass out.
T. 215-16.

Prior to trial, on April 18 and April 25, 2001, a <u>Huntley</u>
hearing was held to determine the admissibility of statements made
by Jacobs. At the conclusion of the hearing, Judge James Harvey
rendered a decision denying the suppression of both Jacobs' oral
and written statements. HC 27-30.[3] In addition, a <u>Sandoval</u> hearing
was conducted in the judge's chamber prior to the commencement of
the trial. T. 3-25. During this hearing, Judge Harvey held that
the prosecutor could use certain convictions from Jacobs' past
history to impeach him, should Jacobs decide to testify. <u>Id.</u>

After the prosecution presented its case, the defense rested
without calling Jacobs or any witnesses to testify. T. 252. Both
parties then presented summations and following the trial court's
charge, the jury retired to deliberate. The jury returned a

---

[3] Citations to "HC__" refer to the <u>Huntley</u> hearing transcript.

verdict finding Jacobs guilty of each count of the indictment.  On May 21, 2001, Judge Harvey sentenced Jacobs to 25 year term of imprisonment for the Assault in the First Degree conviction, and sentences of five years for the conviction for Assault in the Second Degree conviction, and six months each for the counts of Criminal Contempt in the Second and Endangering the Welfare of Child, all of which were set to run concurrently with his 25-year sentence. S.[4] 15-16.

Jacobs appealed his conviction to the New York State Supreme Court, Appellate Division, Fourth Department.  On direct appeal, Jacobs claims that: (1) his statements should have been suppressed; (2) he was severely prejudiced at trial by the trial court's failure to sustain defense objections to leading and/or impeaching questions posed to a key child witness; (3) the trial court's Sandoval ruling gave the prosecution too much leeway; (4) his right to a fair trial was severely prejudiced by the trial court's failure to charge alternative counts to the jury, which resulted in a repugnant verdict, and its failure to make a record of a sidebar conference in which the jury charge was discussed; (5) he was prejudiced by appearing before the jury in shackles; (6) it was an error for the voir dire not to have been transcribed; (7) he was impermissibly penalized for exercising his right to a trial; and (8) the sentence imposed was harsh and excessive.  The Appellate

---

[4] Citations to "S.__" refer to the sentencing minutes.

Division unanimously affirmed his conviction on October 1, 2002.
<u>People v. Jacobs</u>, 298 A.D.2d 954 (4th Dept. 2002). The New York
Court of Appeals denied leave to appeal on December 31, 2002.
<u>People v. Jacobs</u>, 99 N.Y.2d 559(2002). Jacobs did not seek a writ
of *certiorari* from the United States Supreme Court.

Twice, Jacobs moved to vacate the judgment of conviction
pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10.
<u>See</u> Petition ("Pet.") at 2-3 (Docket No. 1). The first motion was
denied by the Ontario County Court (Harvey, J.) on December 17,
2001 and leave to appeal was denied by the Appellate Division,
Fourth Department, on May 8, 2002. Jacobs' second motion to vacate
the judgment of conviction pursuant to C.P.L. § 440.10 was denied
by Ontario County Court on April 17, 2003 and leave to appeal was
denied on June 30, 2003.

### DISCUSSION

This federal habeas corpus petition was filed on November 20,
2003. Jacobs raises eight grounds for relief in his petition,
including claims that: his statements should have been suppressed
at trial as custodial statements (Claim I); the trial court's
failure to sustain defense objections to leading/impeaching the key
child witness severely prejudiced Jacobs' right to a fair trial
(Claim II); the trial court's <u>Sandoval</u> ruling was an abuse of
discretion and thereby deprived Jacobs of a fair trial (Claim III);
the trial court erred by not charging the jury in the alternative

as to the two assault counts in the indictment, and erred in failing to record the sidebar discussing this matter (Claim IV); the trial court's shackling of him during trial violated due process (Claim V); the trial court erred in not making a record of the jury's voir dire (Claim VI); he was impermissibly penalized for asserting his right to trial (Claim VII); and his sentence was harsh and excessive (Claim VIII).

In Jacobs' traverse, he attempts to raise the issue of prosecutorial misconduct based on the use of perjured testimony at trial, however this claim was not raised in his original petition. See Petitioner's Traverse ("Traverse") at 16 (Docket No. 11). Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in relevant part, that "[t]he petition must ... specify all grounds for relief available to the petitioner." See Rule 2(c)(1) of the Rules Governing Section 2254 Cases in the United States District Courts. "In light of this Rule, it has been recognized that a traverse is not the proper pleading in which to raise additional grounds for habeas relief." Parker v. Duncan, 2007 WL 2071745, at *6 (N.D.N.Y. July 17, 2007) (citing Haupt v. Moore, 2005 WL 1518265, at *2 n. 3 (E.D.Mo. June 24, 2005)) (quoting Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.1994)). District courts have held that habeas claims that are raised for the first time in a traverse cannot be properly considered for review. See Jones v. Artus, 615 F.Supp.2d 77, 85

(W.D.N.Y 2009). Thus, this claim will not be considered for habeas relief as it was not raised in the original petition.

## A. Procedural Bar

A district court shall not review a petition for habeas relief unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). In addition, a federal habeas court may be procedurally barred from reviewing a federal claim when a state court barred review of that issue based on adequate and independent state procedural grounds. See Coleman v. Thompson, 501 U.S. 722, 729-33 (1991). Respondent argues that Claims IV and VI are procedurally barred from federal habeas review due to Jacob's failure to comply with New York State procedural rules. See Respondent's Answer at 2 (Docket No. 5). This Court finds that Claim IV and Claim VI are procedurally barred from federal habeas review for the reasons set forth below.

### 1. Petitioner's Jury Charge Claim

In Claim IV, Jacobs alleges that the trial court erred in charging the jury that it could find Jacobs guilt of both Assault in the First Degree and Assault in the Second Degree.[5] Jacobs contends that this charge was improper and led to a repugnant

---

[5] In the indictment, Jacobs' charge for Assault in the First Degree was based on an allegation that Jacobs, "under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct which created a grave risk of death to Bethany Chadwick and thereby caused serious physical injury" to her. See P.L. § 120.10(3). The Assault in the Second Degree charge was based ion an allegation that Jacobs acted "with the intent to cause serious physical injury to Bethany Chadwick caused such injury to Bethany Chadwick." See P.L. § 120.05(1).

verdict, and that he was severely prejudiced by the fact that the sidebar conference regarding this issue was not recorded. <u>See</u> Pet. at 7 (Docket No. 1).

However, on direct appeal, the Appellate Division, Fourth Department explicitly rejected Claim IV as being unpreserved for review, by stating:

> Defendant contends that the court's refusal to charge the jury in the alternative with respect to the two assault counts resulted in a repugnant verdict. Defendant failed to raise that contention before the jury was discharged and therefore failed to preserve his contention for our review (<u>see</u> <u>People v. Satloff</u>, 56 N.Y.2d 745, 746, 452 N.Y.S.2d 12, 437 N.E.2d 271, <u>rearg. denied</u> 57 N.Y.2d 674, 454 N.Y.S.2d 1032, 439 N.E.2d 1247). Defendant further contends that the failure to make a record of an alleged sidebar conference regarding that aspect of the court's charge severely prejudiced his right to a fair trial. "It is defendant's obligation to generate a proper record for review," and here defendant failed to request that a record of the sidebar conference be made (<u>People v. Mason</u>, 227 A.D.2d 289, 290, 643 N.Y.S.2d 53, <u>affd.</u> 89 N.Y.2d 878, 653 N.Y.S.2d 542, 676 N.E.2d 71; *see* <u>also</u> <u>People v. Morgan</u>, 224 A.D.2d 720, 720, 639 N.Y.S.2d 63, <u>lv. denied</u> 88 N.Y.2d 882, 645 N.Y.S.2d 457, 668 N.E.2d 428).

<u>People v. Jacobs</u>, 298 A.D.2d 954, 955 (4th Dept. 2002). Here, the Appellate Division clearly utilized New York State's "contemporaneous objection rule" to hold that Jacobs had failed to object to the jury charge and preserve his arguments related to the charge for appellate review. Accordingly, the court's decision on this issue rested on a state procedural rule. <u>See</u> N.Y. CRIM. PROC. LAW §470.05(2). Because the Appellate Division invoked a state

procedural bar in rejecting Jacobs' jury charge claim this Court may not review any federal question arising from the claim since the state court's decision "rests upon adequate and independent state grounds." <u>Harris v. Reed</u>, 489 U.S. 255, 261 (1989)(citations and internal quotation marks omitted). The Second Circuit has recognized New York State's contemporaneous objection rule to preserve for appellate review as an adequate and independent state procedural rule which may preclude federal habeas review. <u>See</u> <u>Garcia v. Lewis</u>, 188 F.3d 71 (2d Cir. 1999). Thus, Claim IV is procedurally barred from being raised before this Court for habeas review.

Despite the procedural bar for Claim IV, this Court could reach the merits of the claim if Jacobs were to demonstrate cause for the default and prejudice resulting therefrom, or that failure to consider the claim will result in a miscarriage of justice. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). A fundamental miscarriage of justice means a "constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986). However, Jacobs fails to making any showing that would meet the stringent requirements necessary to demonstrate that a miscarriage of justice would result were this Court not to address the merits of Claim IV. The "cause" standard requires that Jacobs "can show that some objective factor external to the defense impeded counsel's efforts

to comply with the State's procedural rule." See Murray v. Carrier, 477 U.S. 478, 488 (1986). Jacobs offers no argument or evidence to demonstrate sufficient "cause" to excuse the procedural bar. Moreover, a petitioner's ability to establish "cause" is a threshold issue and when the federal habeas court does not find cause, the court does not need to evaluate whether prejudice existed. See Engle v. Isaac, 456 U.S. 107, 134 n. 43 (1982) (noting that in its previous decisions, it had "stated these criteria in the conjunctive," and therefore "cause" and "prejudice" test is framed in the conjunctive) (citing Wainwright v. Sykes, 433 U.S. 72, 90-91 (1977)); see also United States v. Frady, 456 U.S. 152, 167 (1982) (declining to consider "cause" when it clearly found no "prejudice"). Accordingly, this Court is precluded from considering Claim IV on the merits and it is dismissed from Jacobs' petition.

## 2. Petitioner's Claim Regarding the Voir Dire

In Claim VI, Jacobs alleges that it was error for the trial court not to transcribe the voir dire during the jury selection. See Pet. at 9 (Docket No. 1). In turn, Respondent contends that this claim is procedurally barred from federal habeas review based on the Appellate Division's holding that the claim was not preserved for appellate review. On direct appeal, the Appellate Division, Fourth Department rejected Jacob's voir dire claim by explicitly stating:

> . . . defendant did not object to the failure to
> make a stenographic record of that portion of the

-14-

> voir dire of the prospective jurors conducted by
> counsel and thus failed to preserve for our review
> his present contention that a stenographic record
> should have been made (see People v. Vasquez, 89
> N.Y.2d 521, 534, 655 N.Y.S.2d 870, 678 N.E.2d 482).

Jacobs, 298 A.D.2d at 955-56. Similar to Claim IV, the Appellate

Division again relied on New York State's "contemporaneous objection

rule" to hold that Jacobs had failed to object and preserve his

arguments regarding a stenographic record of the jurors' voir dire

for appellate review, which demonstrates that the court's decision

rested on a state procedural rule. See N.Y. CRIM. PROC. LAW

§470.05(2). Since the Appellate Division invoked a state procedural

bar in rejecting Jacobs' voir dire claim, this Court is barred from

reviewing claim as the state court's "decision rests upon adequate

and independent state grounds." Harris v. Reed, 489 U.S. 255, 261

(1989)(citations and internal quotation marks omitted). Moreover,

because Jacobs cannot demonstrate cause for the default, or that

failure to consider the claim will result in a miscarriage of

justice. Thus, Jacobs has not overcome the procedural bar for Claim

VI and this Court is precluded from considering this claim on the

merits. Accordingly, Claim VI is dismissed from Jacobs' petition.

**B. Non-Cognizable Claims for Federal Habeas Review**

### 1. Petitioner's Claim Regarding the Trial Court's Sandoval Ruling.

Jacobs argues that the trial court's Sandoval ruling provided

too much leeway in the prosecution's inquiries into his past

criminal activity, which prejudiced his right to fair trial (Claim

III).  This claim, however, fails on habeas review because Jacobs chose not to testify at trial.  When a defendant does not testify at his trial, he cannot challenge the trial court's ruling regarding impeachment evidence. See, e.g., Luce v. United States, 469 U.S. 38, 43 (1984) ("[T]o raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify."); see also Shannon v. Senkowski, 2000 WL 1683448, at *6-7 (S.D.N.Y. Nov. 9, 2000); Beverly v. Walker, 899 F.Supp. 900, 909 (N.D.N.Y. 1995).  Although the Appellate Division's held that the trial court may have abused its discretion with respect to its Sandoval ruling, because a claim of error may not be heard on habeas review unless the defendant testified, this claim is not cognizable for habeas relief.  Accordingly, Claim III is dismissed from this petition.

### 2. Petitioner's Claim of a Harsh or Excessive Sentence

Jacobs argues that the sentence imposed on him following trial was harsh and excessive because the trial judge declined to reduce his sentence based on his claim that he did not instigate the attack. Pet. at 10 (Docket No. 1). Moreover, Jacobs argues that under New York Penal Law, a reduction in his sentence was warranted because he was a "victim" of domestic violence from Bethany Chadwick.  Respondent contends that Claim VIII is not cognizable for federal habeas relief because Jacobs' sentence falls within the permissible statutory range. See Respondent's Memorandum of Law ("Resp't. Mem.") at 23 (Docket No. 6).

Jacobs' assertion that the sentencing judge abused his discretion is generally not a federal claim subject to review by a federal habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir.1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."). A challenge to the term of a sentence does not present a cognizable constitutional issue on federal habeas review if the sentence falls within the statutory range.  White v. Keane, 969 F.2d 1381, 1383 (2d Cir.1992); accord Ross v. Gavin, 101 F.3d 687 (2d Cir.1996) (Table, Text in Westlaw, 1996 WL 346669) (unpublished opinion).

Jacobs was convicted of one count of Assault in the First Degree, a Class B Felony; one count of Assault in the Second Degree, a Class D Felony; one count of Criminal Contempt in the Second Degree, a Class A Misdemeanor; and five counts of Endangering the Welfare of a Child, a Class A Misdemeanor. Jacobs was sentenced as a violent felony offender and received a twenty-five year term for his conviction for Assault in the First Degree. S. at 15. The sentences that were imposed for Jacobs' additional convictions were set to run concurrently to Jacobs' twenty-five year sentence on the

Assault in the First Degree conviction. S. 15-16. The New York State sentencing scheme for a Class B Felony conviction provides that sentences of imprisonment must be at least five years and must not exceed twenty-five years. See P.L. § 70.02(3)(a). Jacobs having received the maximum sentence of twenty-five years cannot assert that it was an impermissible sentence under the New York State statutory sentencing range. Accordingly, this Court finds that Jacobs has failed to raise a constitutional issue that is cognizable by this Court regarding the imposition of his sentence, and therefore cannot obtain habeas review for Claim VIII.

Moreover, the sentencing judge did not abuse his discretion by rejecting Jacobs' argument that his situation warranted a lesser sentence because he felt that Bethany, the victim, instigated the altercation which led to his brutal attack of her. Pet. at 10 (Docket No. 1). The sentencing reduction that Jacobs was seeking is reserved for victims of domestic violence, who then attack their abusers. See P.L. § 60.12(1). However, there is no evidence on the record before this Court that Jacobs was a victim of domestic violence at the hands of Bethany Chadwick and even if he were to present evidence of such abuse, the trial judge was still authorized to impose the maximum sentence of twenty-five years that he received. Id. Thus, Claim VIII is not cognizable and therefore dismissed.

**C. Remaining Claims**

    **1. Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(1), (2); see also Williams v. Taylor, 529 U.S. 362, 375-76 (2000); Miranda v. Bennett, 322 F.3d 171, 177-78 (2d Cir. 2003); Boyette v. LeFevre, 246 F.3d 76, 88 (2d Cir. 2001).

    The federal habeas statute provides that courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This means that "[a] federal court conducting habeas review is limited to determining whether a petitioner's custody is in violation of federal law." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (citing 28 U.S.C. § 2254(a); see, e.g., Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("[F]ederal habeas corpus relief

does not lie for errors of state law."). Furthermore, the AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and] the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Boyette, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotation marks omitted). The Second Circuit has provided additional guidance concerning a federal court's application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: (1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? (2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? (3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

Williams v. Artuz, 237 F.3d 147, 152 (2d Cir. 2001) (citing Francis S. v. Stone, 221 F.3d 100, 108-09 (2d Cir. 2000)).

### 2. Merits of Remaining Claims

#### i. Petitioner's Claim that the Trial Court Erred in Not Suppressing His Statements

Jacobs argues that the statements he made to the police should have been suppressed as custodial statements that were given in the absence of Miranda warnings. See Pet. at 4-5 (Docket No. 1). Respondent contends that Jacobs' argument, in which Jacobs claims both his oral and subsequent written statements should have been suppressed, is without merit. See Resp't. Mem. at 10-13 (Docket

No. 6). With regard to Jacobs' oral statements, Respondent asserts that Jacobs' argument is based on a misunderstanding of <u>Miranda</u>, and that the Appellate Division's decision was correct. <u>Id.</u> at 12. Furthermore, Respondent states that Jacobs cannot challenge the admissibility of his written statement because this claim was never raised as a separate claim in any direct or collateral appeal. <u>Id.</u> at 11.

Turning first to Jacobs' contention that the trial court improperly denied his motion for suppression of his oral statements, at the Huntley Hearing, the trial court determined that Jacobs' oral statements, which were given to Officer Greer the day after the assault occurred regarding Jacobs' whereabouts on the night of the assault, were deemed admissible because Jacobs' statements were not in response to an officer's questioning nor was Jacobs in custody at the time of the statement. HC. 27-28. On direct appeal, the Appellate Division, Fourth Department affirmed the trial court's factual determination by stating:

> Defendant contends that his initial statements to the police and his subsequent written statement should have been suppressed because he had not been advised of his *Miranda* rights prior to the alleged custodial interrogation resulting in those statements. Here, the police officer merely asked defendant his name and date of birth with respect to the issuance of a warrant on a separate matter and defendant then volunteered information that led to a single investigatory question. Thus, it cannot be said that a reasonable person in defendant's position, innocent of any crime, would have believed that he or she was in custody (<u>see</u> <u>People v. Yukl</u>, 25 N.Y.2d 585, 589, 307 N.Y.S.2d 857, 256 N.E.2d

172, rearg. denied 26 N.Y.2d 845, 309 N.Y.S.2d 593,
258 N.E.2d 90, cert. denied 400 U.S. 851, 91 S.Ct.
78, 27 L.Ed.2d 89; see also People v. Robbins, 236
A.D.2d 823, 824, 654 N.Y.S.2d 494, lv. denied 90
N.Y.2d 863, 661 N.Y.S.2d 190, 683 N.E.2d 1064;
People v. Flecha, 195 A.D.2d 1052, 600 N.Y.S.2d
400).

Jacobs, 298 A.d.2d at 954-55.

To determine whether a suspect was in custody for purposes of
a Miranda claim, a court must look to (1) "the circumstances
surrounding the interrogation"; and determine (2) whether "a
reasonable person [would] have felt he or she was at liberty to
terminate the interrogation and leave." Tankleff v. Senkowski, 135
F.3d 235, 243 (2d Cir.1998) (quoting Thompson v. Keohane, 516 U.S.
99, 112 (1995)). Furthermore, the court must utilize an objective
test when looking at the totality of circumstances to determine
whether a suspect is in custody. Id. at 243-44.

Here, the Appellate Division affirmed the trial court's
determination that Jacobs was not in custody at the time that he
spontaneously made the oral statements to Officer Greer. Jacobs, 298
A.D.2d at 954-55. This conclusion was not unreasonable. Jacobs was
approached by Officer Greer while he was standing outside of the
victim's house at 95 West Street, and Officer Greer proceeded only
to ask Jacobs for his name and date of birth. See HC 5. In response
to Officer Greer's question, Jacobs provided both his name and date
of birth and volunteered that he was only there "to find out what
happened last night." Id. Officer Greer then asked Jacobs what had

happened at 95 West Street, and Jacobs responded that he did not know and he was "out of town." Id. There is no evidence in the record that Jacobs was being restrained in any manner or that he did not volunteer these statements. Given these facts, the trial court's determination and the Appellate Division's affirmation of that decision that Jacobs was not in custody was a reasonable application of the Supreme Court's rule in Thompson. See Thompson, 516 U.S. at 112. Accordingly, Jacobs' claim that his oral statements were improperly admitted are denied.

Furthermore, Jacobs' claim that his written statement should have been suppressed is vaguely posed and stems from his belief that this statement was obtained after his allegedly illegal arrest, which was made due to his oral statements. See Traverse at 5 (Docket No.11). However, Jacobs only raises this claim in his traverse and failed to raise in on direct appeal or through a collateral attack. Thus, under Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court declines to review this claim as it was not proper raised in the original petition. See Rule 2(c)(1) of the Rules Governing Section 2254 Cases in the United States District Courts.

### ii. Petitioner's Claim Regarding the Testimony of Michael Jacobs Jr.

Jacobs contends that the trial court erred by failing to sustain his counsel's objections to the alleged leading and impeaching of Michael J. Jacobs Jr., the defendant's eleven-year old

son who was the sole eyewitness to the incident, on direct examination (Claim II). Pet. at 6 (Docket No. 1). Jacobs argues that his constitutional right to a fair trial was violated by the trial court's decision to allow the prosecution to pose leading questions to Michael J. Jacobs Jr. Id. On direct appeal, the Appellate Division, Fourth Department adjudicated this claim on the merits and rejected it by stating:

> Contrary to defendant's contention, County Court properly exercised its discretion in permitting the prosecutor to ask leading questions of the prosecution's own witness and to impeach that witness inasmuch as the witness was defendant's son (see People v. Sexton, 187 N.Y. 495, 509, 80 N.E. 396; People v. Cuttler, 270 A.D.2d 654, 705 N.Y.S.2d 416,lv. denied **11195 N.Y.2d 795, 711 N.Y.S.2d 163, 733 N.E.2d 235).

Jacobs, 298 A.D.2d at 955.

The Supreme Court has made clear that "habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (citations omitted). Thus, a petitioner seeking habeas relief based upon an error of state evidentiary law must also allege that the state evidentiary error violated an identifiable federal constitutional right, "which necessarily eliminates consideration of purely state evidentiary errors not cognizable in the federal system." King v. Greiner, 2008 WL 4410109, at *38 (S.D.N.Y. Sept. 26, 2008) (citations and footnote omitted). "The first step in this analysis is to determine whether the state court decision violated a state evidentiary rule, because the proper application

of a presumptively constitutional state evidentiary rule could not be unconstitutional." Id. (citing Brooks v. Artuz, 2000 WL 1532918 at *6, 9 (S.D.N.Y. Oct. 17, 2000) (petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude); Jones v. Stinson, 94 F.Supp.2d 370, 391-92 (E.D.N.Y 2000) (once the habeas court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis).

On direct appeal, the Appellate Division found that the trial court's decision to allow the prosecutor to use leading and impeaching questions during Michael Jacobs Jr's testimony was testifying about the incident was proper. Jacobs, 298 A.D.2d at 955. Furthermore, the trial court's "ruling permitting the prosecution to ask leading questions is a matter of state evidentiary law [and] the validity of such a ruling is reviewable in a federal habeas corpus proceeding only insofar as it resulted in a trial so fundamentally unfair as to deny [the defendant] due process." See Wallace v. Lockhart, 701 F.2d 719, 725 (8th Cir. 1983). Here, the trial court allowed the prosecutor to use leading questions while examining Michael J. Jacobs Jr. because he admitted that his father (Jacobs) told him not to say anything at trial, and he did not want to testify against his father. T. 128-29. The trial did not commit an error as it is established in New York State law that a prosecutor may use leading questions with an adverse and

unwilling witness. <u>See</u> <u>People v. Clark</u>, 181 A.D.2d 1028 (4th Dept. 1992) (citing <u>People v. Marshall</u>, 144 A.D.2d 1005 (1988), <u>lv. denied</u> 73 N.Y.2d 893 (1989).

In addition, the trial court committed no error in allowing the prosecutor to impeach Michael J. Jacobs when he began to make statements contrary to his previous grand jury testimony. The trial court's determination to allow the prosecutor to impeach Michael J. Jacobs Jr. was not an error of state evidentiary law, but was proper pursuant to § 60.35 of New York's Criminal Procedure Law, which permits a party to impeach their own witness when that witness gives contradictory testimony. <u>See</u> N.Y. CRIM. PROC. LAW § 60.35(1).

Therefore, I find that Jacobs' Claim II does not amount to a fundamental deprivation of due process by the trial court permitting impeachment and leading questions consistent with state evidentiary law, and this claim is dismissed.

### iii. Petitioner's Claim that He was Improperly Shackled at Trial

Jacobs argues that his right to a fair trial was violated when the trial judge ordered him to remain shackled for the length of the trial, without an adequate factual basis for this action (Claim V). He claims that the shackles on his legs were visible to the jury and primed the jury to think that Jacobs was violent and guilty of the assault charges. <u>See</u> Traverse at 14 (Docket No. 11). Respondent submits that Jacobs' shackling was not unconstitutional, as Jacobs has failed to prove that a Supreme Court precedent exists that

requires the trial court to hold a hearing prior to ordering the defendant be shackled. <u>See</u> Resp't Mem. at 18 (Docket No. 6). In addition, Respondent contends that the shackling was consistent with the trial court's "inherent obligation" to maintain proper decorum in its proceeding and that appropriate curative instructions were given to the jury.

Jacobs raised this claim for the first time on direct appeal. The Appellate Division, Fourth Department rejected his claim that he was improperly shackled during the trial by stating:

> Contrary to the further contention of defendant, a reasonable basis was articulated on the record for placing him in physical restraints in the courtroom (<u>see</u> <u>People v. Rouse</u>, 79 N.Y.2d 934, 935, 582 N.Y.S.2d 986, 591 N.E.2d 1172; <u>cf.</u> <u>People v. Vigliotti</u>, 203 A.D.2d 898, 611 N.Y.S.2d 413), and the court issued appropriate instructions, thereby minimizing any potential prejudice to defendant (<u>see</u> <u>People v. Benito</u>, 256 A.D.2d 221, 683 N.Y.S.2d 27,<u>lv. denied</u> 93 N.Y.2d 850, 688 N.Y.S.2d 498, 710 N.E.2d 1097, <u>cert. denied</u> 528 U.S. 810, 120 S.Ct. 42, 145 L.Ed.2d 38)

<u>Jacobs</u>, 298 A.D.2d at 955. Since this claim has been adjudicated on the merits by the Appellate Division, this Court may not grant a habeas petition unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

"The Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are

justified by a state interest specific to a particular trial." <u>Deck v. Missouri</u>, 544 U.S. 622, 629 (2005).  The Supreme Court has held that if trial court can establish a legitimate reason for visible shackles because of, <u>inter alia</u>, potential security problems or the risk of escape during the trial, then the defendant's right to due process is not violated. <u>Id.</u> at 629, 633.

In the present case, the Appellate Division's decision was not "contrary to" or an "unreasonable application" of established Supreme Court precedent.  It is clear from the record that the trial court conducted the required analysis prior to making the decision that Jacobs be shackled throughout the trial.  Prior to jury selection, it was requested that Jacobs be shackled for the trial due to threats that he had made and an outburst following the <u>Huntley</u> hearing, where Jacobs pushed over a lectern. T. 27.  The trial judge reviewed an incident that involved a nurse at the correctional facility, where Jacobs threatened to "throw piss" at her. T. 28.  Also, notice was received from the Mental Health Department that one of Jacobs' relative was concerned that Jacobs may act out violently, with the intention of harming himself or those in the courtroom and correctional facility. <u>Id.</u>  In addition, Michael Tantillo ("Tantillo"), Ontario County District Attorney, asserted concern over Jacobs' increasingly violent behavior and his intent or desire to act out violently at trial. T. 29.  Tantillo also introduced evidence that Jacobs had attempted to stab a

correctional officer with a pen while in jail. T. 30. The trial judge's determination to shackle Jacobs emphasized that the order was necessary to maintain the "decorum and security of the courtroom and all those present." T. 31. Moreover, the trial court accepted the request of Jacob's counsel to provide a curative instruction to the jury regarding the shackles, which was done during the jury charge. T. 31, 284. Lastly, there is no evidence that the Supreme Court has constitutionally mandated that the trial court's determination on shackling a defendant requires a hearing to take place. Therefore, I find that the record is replete with evidence that the trial judge had a legitimate reason for shackling Jacobs, and the Appellate Division's decision was not "contrary to" nor an "unreasonable application of" established Supreme Court law. Accordingly, Claim V is denied.

### iv. Petitioner's Claim that the Sentence Imposed Constituted a Penalty for His Exercising His Right to Trial.

Jacobs contends that he was impermissibly penalized for asserting his right to a trial because he was sentenced to a term of twenty-five years' incarceration(Claim VII). See Pet. at 9 (Docket No. 1). He argues that the trial court's vindictiveness is evidenced by the difference between his actual sentence and the plea bargain which was offered prior to trial. Id. Respondent, however, argues that this claim is meritless and beyond the authority of federal habeas courts. See Resp't Mem. at 20-21 (Docket No. 6).

Respondent bases this contention on Jacobs claim for vindictive sentencing on the Second Circuit's holding that authority of federal habeas courts to review these claims is limited to:

> . . . a claim that the sentence was illegally imposed, in excess of the applicable statutory maximum, based upon materially incorrect information, or the result of a constitutionally defective sentencing procedure, ordinarily we decline to interfere with the exercise of a trial court's sentencing discretion. <u>United States v. Slocum</u>, 695 F.2d 650, 657 (2d Cir.1982), <u>cert. denied</u>, 460 U.S. 1015, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983); <u>accord Dorszynski v. United States</u>, 418 U.S. 424, 431, 94 S.Ct. 3042, 3046, 41 L.Ed.2d 855 (1974) ("[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end.").

<u>United States v. Gaggi</u>, 811 F.2d 47, 62 (2d Cir. 1987).

To the extent that Jacobs suggests that he was penalized for rejecting the plea offer and proceeding to trial, he does not raise a claim of actual vindictiveness because he fails to demonstrate that the trial judge stated or implied that the sentence was based on Jacobs' refusal of the plea offer. <u>See Naranjo v. Filion</u>, 2003 WL 1900867, at *10 (S.D.N.Y. Apr.16, 2003) (denying habeas claim based on disparity between pre-trial offer of five to ten years and ultimate sentence of twenty-five to fifty years; such difference did not establish claim of actual vindictiveness because judge never suggested that sentence based on refusal of plea offer). The mere disparity between Jacobs' plea offer and his actual sentence, which was imposed after he was convicted on all counts of the indictment

and exhibited little remorse for the extensive injuries he caused to the victim, does not establish actual vindictiveness. See id. (citing, inter alia, Corbitt v. New Jersey, 439 U.S. 212, 219 (1978) ("We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea.... We discern no element of retaliation or vindictiveness against [appellant] for going to trial. There is no suggestion that he was subjected to unwarranted charges. Nor does this record indicate that he was being punished for exercising a constitutional right.... There is no doubt that those homicide defendants who are willing to plead non vult may be treated more leniently than those who go to trial, but withholding the possibility of leniency from the latter cannot be equated with impermissible punishment as long as our cases sustaining plea bargaining remain undisturbed."); Chaffin v. Stynchcombe, 412 U.S. 17, 31, (1973); United States ex rel. Williams v. McMann, 436 F.2d 103, 106-07 (2d Cir. 1970), cert. denied, 402 U.S. 914, (1971); Bailey v. Artuz, 1995 WL 684057, at *2 (N.D.N.Y. Nov. 15, 1995) ("[A] sentencing judge does not show vindictiveness ... by sentencing a defendant who, after withdrawing his plea of guilty to a lesser offense carrying a lower penalty, has then been convicted of a more serious offense to the higher penalty authorized ... [Petitioner] has offered no evidence of vindictive sentencing beyond the fact of the plea bargain offered to him and the actual sentence he received.... Therefore, [petitioner] has not made out a

claim of constitutionally impermissible vindictive sentencing.")).

Accordingly, Claim VII is denied because Jacobs has not and cannot present any evidence that the trial judge acted with actual vindictiveness when sentencing Jacobs.

## CONCLUSION

For the reasons stated above, Michael Jacobs' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied in its entirety, and the petition is dismissed. Further, because Jacobs has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. § 2253.

**ALL OF THE ABOVE IS SO ORDERED**

<u>s/Michael A. Telesca</u>

MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           August 3, 2009